May it please the Court, my name is Shelley Kosakis. I'm here appearing on behalf of the appellant and the defendant in this case, Mr. Michael Byce. At this time, I would like to reserve five minutes of my time for rebuttal. Thank you. Your Honors, this is a case about, in a legal sense, about the application of a well-settled standard for determining whether a creator of software is an employee or an independent contractor under the well-known Work for Hire section of the 1976 Copyright Act. In a simpler sense, Your Honors, this is a case about whether a company should be allowed to reap the benefits of employment without meeting any of the requirements of employment in the State of Idaho, even the most basic requirements of employment, such as paying payroll taxes. It is undisputed that the appellant and the respondent in this case did none of those. However, they have thus far been allowed to reap the rewards of the Work for Hire doctrine under the Copyright Act, and we are here asking the Court to reverse the decision and find otherwise. In fact, isn't a test under the Work for Hire doctrine essentially the same as just a common law agency determination? It is. Well, then it becomes a finding of fact, doesn't it? It becomes a finding of fact, and I'm not challenging those findings of fact, Your Honor. Well, then why is the finding insufficient as a matter of law to establish employment? Because it's the application of those findings to the standard in the Community for Creative Nonviolence v. Reed case. That is an error, and that is reviewed under a de novo standard under the Well-Settled Case Law here. I'm asking the Court to review the findings and apply them to the Well-Settled Standard under the Reed case under a de novo standard. I have not challenged any of the findings of the District Court in its opinion. In fact, I have referred to them and will refer to them and accept those findings. There are additional facts that are undisputed by the respondent that were simply ignored by the District Court and not taken into account. There are 13 factors under the Reed case. None of those factors is positive, right? That's correct. I understand that it's a balancing test, and when the test tips in favor of an independent contractor status, then that's what the that's what happened here. There are 13 factors in Reed. Ten of them, if you look at the findings of the District Court, ten of those weigh in favor of independent contractor status. And under the Reed case, as the U.S. Supreme Court said, none of these is to be given any particular weight. All are to be weighed, and it's a balancing act. I'd like to, however, discuss with some of my time the tax treatment. And that is one of the factors under Reed, and I think that is an important factor here that we would like the Court to consider. It was undisputed at trial that JustMed's 2004 and 2005 tax returns indicated that Mr. Bice was not an employee. Rather, he was treated as an independent contractor. His salary was not reported on the 2004 and 2005 tax returns. That remains undisputed. The reason they gave for not reporting it is because they couldn't value it? They believed, yes, that the shares had no value. If you were a JustMed, how would you have reported it? You would report it at a value of 50 cents per share. That was the evidence at the trial. Because JustMed was selling shares at the same time it was allegedly issuing shares to Mr. Bice. It was selling shares to third parties at 50 cents per share and accepting money for those shares. And so the undisputed testimony then is that those shares had a value of 50 cents per share. Just because a company pays someone in shares, assuming that's what happened here, does not mean that they do not have to pay payroll taxes. Well, that may be the case, but the intention of the parties was that at that point that he be an employee paid in shares and the employer might have been wrong as to what he had to pay in the way of taxes. But it's different from the situation where someone is paid in money. So it seems to me that that doesn't weigh as strongly in favor as you would think. I would submit that the standard for paying payroll taxes, just because you are an informal company, should not be allowed to escape it because they decide to issue compensation in shares. They're accepting value in money for shares and then issuing those to employees without reporting that to the IRS or to the state tax commission. Did the company report that it had any employees at all? No, it did not. But there were other people working for the company, weren't there? They claim that there was one other employee prior to when Mr. Bice was there that was creating source code. And that person wasn't shown on the tax return as an employee, right? Either. That's correct. And they did not issue a W-2. Perhaps the tax returns they perhaps could have been mistaken on, but what about the requirement of a W-2 that all employers should is a well-known requirement that you must issue to an employee. They did not issue that to Mr. Bice. In fact, they issued him a K-1. I submit to the court that the best evidence of what the party's intent was, if you can draw inferences from the facts, which you're allowed to do, is what really happened in 2004 and 2005, not the testimony of Mr. Just, who came in and said that it was their intent to create employment. And I would add that under the Reed test that we are bound by, intent is not a factor. Whether these two parties intended to create an employment relationship, assuming that they did, is not one of the factors to be considered out of the 13. On page 17 of the opinion, of the court's opinion, he states that payroll and Social Security taxes were not paid. Again, this is undisputed. He also states the of its opinion, that the shares were valued by JustMed at 50 cents per share. Again, an undisputed fact. I'll look at some of the other factors, if the court's not convinced that the tax treatment is the best evidence of what these parties intended. If you look at page 16 of the court's opinion, it acknowledged and found that JustMed complied with none of the other requirements in Idaho for employment. They did not issue an I-9. They did not have Mr. Bice fill out a W-4 for nine months. They did not issue him a W-2. They did not pay workers' compensation insurance. It is also undisputed that they did not pay unemployment insurance. Those are all requirements. So perhaps they could have been mistaken about one or two, but we're talking, Your Honors, about all of the requirements in the state of Idaho for an employment relationship. While I acknowledge that the tax treatment is only one factor and there are others, I urge this court to consider the ramifications of allowing a company to violate the most important responsibilities of an employer and then to come to this court and ask to reap the benefits of an employment relationship through the work-for-hire doctrine. What about the other factors? I'll move to those. There's a right to control that the U.S. Supreme Court has said is one of the factors to consider. There was no finding by the district court that JustMed had the right to control Mr. Bice's manner and means of doing his work, of creating the code. The court found that Bice, he communicated and met with Mr. Just to discuss the code and sent the code to Just for evaluation. That was the finding. That does not lend to a conclusion of a right to control. There was no finding that there was a right to control. Again, another factor in favor of an independent contractor relationship. It is undisputed that Mr. Bice worked from his home in Idaho at any hours that he so pleased and JustMed's headquarters were in Oregon. It is undisputed that there were no computer programmers, anybody that was skilled enough that could have supervised or directed Mr. Bice's work. He was the sole programmer and the sole creator of the source code. That's also found in the court's opinion where the district court found that Mr. Just, the owner of JustMed, did not edit the source code. He was not able to do so. Mr. Bice did not receive any monetary compensation from JustMed until he requested it. The court found that Bice was paid a salary. However, this is an incorrect label. Bice received not a dime for nine months for his work. In fact, the testimony was that he lived on credit until he asked. However, Bice did not receive a stock certificate. So if JustMed was doing what it was supposed to be doing or telling this court that it was doing and issuing shares on a monthly basis as a salary, not one stock certificate was issued to Mr. Bice. There is not one piece of evidence that they can point you to between Mr. Bice and Mr. Just or any third party outside of Mr. Joel Just that says that the agreement was that he would be paid in shares. If you're just under five minutes, do you want to reserve? Yes, I'll reserve the rest of my time. Thank you. Thank you, Your Honor. May it please the Court, my name is Jed Manwaring. Ms. Kozakis and I were both trial counsel in the case. I'm representing the company JustMed. And just to give a little background, this is the company's product and this was Exhibit 1 and 2 and it replaces that vibrating item that you see on folks who had a larynectomy. Would you try to speak a little louder? I'm sorry, Your Honor. But this replaces that vibrating mechanism that you've seen people who use a larynectomy and it's the first of its kind and it's a very unique product. The code we're talking about runs this unit. The code has no purpose whatsoever in the entire world other than to run this unit and this unit is totally owned by the company, invented by the company, copyrighted, and protected by the company. Copyrighted when? Way after this case started, right? No, no, no, no. This unit was copyrighted. You said the code was copyrighted. No, I misspoke. I meant that this entire unit and everything in it was copyrighted in early 2003. Except the code. I'll get to that. The code did have the copyright of JustMed embedded in it from the beginning. Well, wait a minute, it had the legend but it was not copyrighted. It was not registered. Isn't that true? Filing it with the Copyright Office is optional. Well, why don't we take it one step at a time? He asked you whether it was It wasn't registered, right? It was not registered, but it had the copyright symbol line up on it. Okay. Try as he might, Mr. Bice has tried to turn this into a legal argument, but it in fact is a factual finding case. Take, for example, was the light red or was the light green? What do you do to get there? You find out. You examine all the witnesses. What did they say? What are their credibility? Where were they standing? Where was the sun? What were the documents? Were there any documents around there? Who has credibility? You go through that and you ultimately make a finding, the fact finder, the light was red or the light was green. In this case, it's the same thing. Was Mr. Bice an employee or an independent contractor? What do you do? You follow the analysis of CCNV and you look at the witnesses. You look at the relationship. You look at the duration. You look at the tools. You have all those factors and they are non-exhaustive factors. What that means to me, I believe, is that there may be other factors that come into play in a particular unique case that the fact finder can look at and rely on to make the factual determination. Was this person an employee or was this person an independent contractor? This is sort of a unique case in one sense in that it doesn't really fit nicely into the rubrics of independent contractor employee. It's not unique in the sense that I think this is pretty common for startups where you have somebody who is contributing code, somebody who is contributing money or other assets. How are we supposed to analyze this in the startup world where you have maybe two partners who are contributing equally because you can say, I suppose if you apply the factors, you could come out differently depending on the case on this, but they really, partners or contributors, shareholders, these kinds of cases don't fit neatly into the work for hire rubric. How do you think we ought to analyze this? I think you start. I think you do start with those ICNV case and you go through them and you look at it in today's society or today's relationships and one of those is this is high-tech startup electronic type of relationship. There's no question that in today's society people work at home. Employees work at home. Mr. Just testified at the time of trial. He was a manager in another high-tech company and he had umpteen employees under his supervision and I forget the number he said, but a fair amount of them are working at home on the computers. It's just sometimes some of those factors over time I think lose some weight, for example, whether you're working at home or not. Fifty years ago, that was probably a key factor. Today, maybe not, especially if you're working in high-tech. Then you look at the relationship. Relationship is one of those factors. Mr. Bice is a principal in the company. He owns, of three people, he owns the third highest percentage of stock. He's a director in the company. He's been in the company from the beginning and it wasn't until after Mr. Liebler, whoever who was the source code writer, employee no dispute about that, says, I'm moving back to my kids, I'm retiring and then Mr. Bice says, hey, I'd like to take his place. And he did. And there's no dispute in the evidence that the salary package from Mr. Liebler was transferred to Mr. Bice. That was the relationship. And in this company, in these startup high-tech companies, there's no income. There's no money to pay people. And you come into that knowing that you're not going to get paid. And Mr. Just testified that this wasn't the first high-tech company he'd taken from ground up. He'd had priors. And he had attorneys. He testified to the attorney and the tax advice that he got. It came into the evidence. And he testified that what happens is, when you get these going, everybody's accrued stock. If they put money in, they get a stock certificate. But as they work, he kept a chart, it's in the evidence, to accrue certain amounts of shares per month based upon a salary. And the court found it was a salary. So there's no money to pay withholding. There's no money to pay. Now, eventually, Mr. Bice says, hey, I can't do this anymore. I need some money. There's a failure that your opponent mentions about failure to comply with all of the laws that govern employment. There's two or three. Tax withholding. Name me one that they complied with. One law that governs employment. They gave each employee a K-1. And the K-1 showed the increase over the years. You gave him a K-1? A K-1. You mean it showed the amount of stock awarded? Yes. But nothing was withheld. There was no withholding. It wasn't shown as wages. Was it? It was shown. My recollection now, I'm not a tax expert, but K-1 is a shareholder's return, right? That's right. In other words, that's the return they got as a shareholder. That's what Mr. Bice was, a shareholder. I know, but it's not compensation they got as an employee. In other words, every shareholder, whether you're an employer or not, if you get something from the corporation, you get a K-1, right? It's entirely independent of an employment relationship. It has nothing to do with it. I get some K-1s myself, and I know I'm not employed by those entities. So again, name me one employment law that JustMed complied with. K-1 is not an employment law. You're talking employment statute? Well, anything that governs employment, like payroll taxes, W-2s, whatever it is. There was a W-4 signed. I was just coming to that in my discussion. He did sign a W-4 acknowledging that he was an employee and that... That was when? That was in probably May of 2004 after he worked for a long time and said, look, I can't assume the credit anymore. I want to be paid some money. So the company said, okay, we'll pay you some money outright. He signed the W-4 and he signed that, and checks were issued with withholding. At that point, within a month or two, the dispute arose and he didn't cash the checks. But he did sign the withholding. He did receive the checks. They were delivered to him. Workers comp. He's a principal in the company. Principals in companies have the option to not be insured for workers comp. So that's not a factor. That's the only factor in this entire scheme that weighs in favor of an independent contractor. But look at Mr. Bice's tax returns in his testimony. Did he treat it like that? I've got two areas of inquiry I want to pursue with you. One is that besides questioning the employment status of Mr. Bice, the appellant also questions whether or not there was a violation of the Idaho trade secrets law. Now the judge found first, what, misappropriation? I don't understand how somebody who creates a code and that's his job, according to you, can misappropriate it. I mean, he has it already. How can he misappropriate it? He had possession of it. But how does he misappropriate it? He deleted it from the company computers. Denied them access to it. Well, that's not appropriate. He already has it, though. Maybe he's denying them access, but he's not appropriating because he already has it. The statute... The appropriate thing is to take it, isn't it? Well, you can take it by taking it from the company and he took it from the company. No, because he already had it. Well, he had possession. He had a license or permission to have it, but he didn't have permission to delete it off the company computers. It's like, say, I go into your office and, you know, burn up your files, right? In your filing cabinet. Am I misappropriating those? I think so. If you start the fire, I think you are. And then you withhold it. It's destroying them. And you refuse to give them back and you have possession of them. That's misappropriation. That's use. I don't have possession if I burn them up. Isn't that more conversion than misappropriation? I think it fits both. I think it did fit. Let's assume he had not deleted the files. Is your argument the same under the Idaho Trade Secrets Act? No. So you're totally dependent upon the destruction of the files for arguing that a trade secret was misappropriated. He didn't destroy it. He basically stole it. He deleted it off. When you say he stole it, you're just assuming the answer to the question. That's what we're trying to find out. Did he steal it? Hear me out. He deleted it. He deleted the company's file, right? Now let me put it this way. If he didn't already have his own copy of that code, right? If he just simply deleted the company's copy, that can't be misappropriation, right? That's not all he did. That's my question, though. If he didn't have a copy himself, and he just merely destroyed the company's copy, that's not misappropriation. I think it is. How can it be? Nobody has it then. Not only has he deleted it, he's withholding it. I said, if he didn't have his own copy. He just deleted the company's copy. He denied the owner access to the owner's property. That's misappropriation. He's using it. Counsel, the judiciary court found conversion, and that is not appealed. Is that correct? That's true. Neither is a bad faith acts breach of fiduciary duty by an officer director of a company. That's not appealed. I'm about out of time, but let me put it. One of the factors is tools. What tools did this man use? Described in the opinion, there's a whole pile of tools, and items that he had to have to do his work. All of those were provided to him other than his laptop. The laptop was the minor tool. Key factor in what was provided to him was the source code that Mr. Liebler had drafted as an employee of the company. In that source code was the copyright statement of Just Med Inc. As Mr. Bice made new revisions, as they revise a moniker or name, he would email it back to the company. It's kind of odd to call the code a tool, isn't it? I don't think so, because he couldn't go to work on the project without having this tool of the source code. Just like you hire somebody to say, I have this boat frame, I want you to finish it up, right? Frame. And you tell me that boat frame is a tool? He couldn't do his work with... The answer is no, right? It's not a tool. No, I think it is a tool. The frame of a boat is a tool? I think it is. It's the starting point. If you look at this list of versions of the source code, every one of them, down to right to the end, had Just Med's source code or copyright statement in it, embedded in the text. And we know that because he changed the year on Just Med's copyright statement back when the years changed. I want to go through the manner and method of control. Exhibits 26, 25, and 26. Those are constant flow of email and correspondence between the two, Mr. Just, the president, and Mr. Bice, the employee, wherein he, Mr. Just, is exercising manner and method of control in the business. Was Just Med in the business? That's one of the factors of creating code. Yes, they've been doing it from the beginning of the company. You're over your time now. Oh, I am? I'm showing 30 seconds here. That's over. Oh, that's over. I'm sorry. Any further questions from the panel? Thank you for your argument. By the way, Mr. Bice still owns shares in the company? He still has shares in the company. Yes. Okay. Thank you, Your Honors. Council for Just Med did not name one requirement in Idaho for employers that Just Med complied with. Mr. Bice started in September of 2004 when he asked for compensation. In May of 2005, nine months later, he was signed a W-4. That's when he asked for cash compensation. Yes, that's correct, when he asked for some money. This workers' comp requirement, if you look at page 7 of the district court's opinion, the district court found that paying workers' comp insurance was a requirement in the state of Idaho. So there has not been one that they complied with. With respect to I asked this court for there to be a different standard for startup companies because they are complex or they are high-tech. So they don't need to be worried about the requirements to pay payroll and taxes. I think the in many startups, especially in software startups, what happens is you have somebody with an idea and perhaps some money or somebody with an idea and no money and the two get together, whether it's a partnership or a shareholder arrangement, and they have no money, no payments in stock or share. How are we supposed to deal with that in terms of this rubric? Because I don't think it neatly fits into either the independent contractor or necessarily the employee. No, I think you're correct in that they had the money guy and Mr. Bice had the ability to develop the source code and they came together and they each had shares. So he's issued shares. That's correct. And that's how they started and that's how they operated. Right. So under that scenario, why doesn't the work for hire doctrine apply when the idea is that there's a corporate enterprise, a startup that's going to develop this product and the source code is developed for the enterprise? Because under the 1976 Act, unless there is an employment relationship, there can be no ownership without transfer. And that was one of the big changes in the Copyright Act, as I'm sure the court is aware. And so these people that come together, the money guy and the idea guy or the creator, that's the relationship they have. Neither is an independent contractor. Yes. All I'm suggesting is that the traditional employment tests in a startup initial sales without any cash may not necessarily apply. It would be unusual to provide a worker's comp to a principal. It would be unusual to perhaps tax on a payroll when you're just issuing shares. Yes. I agree. It doesn't fit neatly into either. But without that employment relationship, there can be no ownership. And that's the key. I'm sorry. I suggest that this case might have very substantial implications for startups because they don't want to have the development go elsewhere than to the company. And to find this guy to be an independent contractor is really going to be kind of counterproductive to what really goes on out there. I submit to the court, I would agree with the court, that this would have ramifications for startups. And I believe that those ramifications would be that we have a district court opinion right now in the District of Idaho that says that because they are a startup and informal they were not held to the standards of employment. And I think as of the ramification that I'm asking this court to consider, would it be okay, like I said, for startups not to have to require that's not the state of the law. And they need to pay payroll taxes based on the value of their shares. They all need to do that. That's the law. And that's the ramifications I believe that this opinion could have. I would point this court to the Carter opinion in the Second Circuit where they stated that when one is denied the basic attributes of employment this denial is wholly inconsistent with the work for higher defense. Mr. Bice was denied all of the basic attributes of employment. Making this wholly inconsistent with JustMed should not be able then to come in here and avail themselves of the work for higher defense. One last comment is Mr. Bice did register the code. That's prima facie evidence under the cases under 20th Century Fox. That's prima facie evidence of ownership. That was not considered at all by the district court. Well, what do you mean it wasn't considered? The district court ruled against him on his counterclaim, didn't it? Yes, on our counterclaim for our declaratory. It must have considered it. Maybe it didn't say anything about it in the opinion. It just denied it, right? There was nothing in the findings. That's correct, Your Honor, or in the conclusions about that factor. Any further questions? Thank you, Counsel. Thank you. It's an interesting case and presents some interesting questions, but let me ask both counsel this before we take it under submission. There's an ongoing business relationship, obviously, between the two of you and this will have no impact on our decision. We're going to decide the case one way or the other, but in some of these cases you're better off settling it. Are either of you interested in the services of the circuit mediator or have you reached an impasse? Again, it will not make any difference to us one way or the other. Counsel? Your Honor? You can just say yes or no, whether you're interested or not. And you concur with that? We were interested. Okay. Occasionally we will send a letter requesting your views on voluntary mediation. We may do that in this case. Otherwise, we will have the case under submission. We thank you both for your arguments. Again, it's a very interesting issue, very interesting case. Thanks for coming out to Seattle. The next case on this morning's oral argument calendar is Rosemere v. EPA.
judges: Fletcher B. , Tashima, Thomas